[Cite as *In re J.K.*, 2013-Ohio-1050.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                                   |
|--------------------------|---|-----------------------------------|
|                          | : | JUDGES:                           |
| IN THE MATTER OF:        | : | Patricia A. Delaney, P.J.         |
|                          | : | William B. Hoffman, J.            |
| J.K. AND C.A.            | : | John W. Wise, J.                  |
|                          | : |                                   |
|                          | : |                                   |
|                          | : | Case No. 2012 CA 00212            |
|                          | : |                                   |
|                          | : |                                   |
|                          | : | O P I N I O N                     |

CHARACTER OF PROCEEDING:    Civil Appeal from Stark County
                            Court of Common Pleas, Juvenile
                            Division, Case No. 2010JCV01494

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     March 18, 2013

APPEARANCES:

For Appellee                          For Appellant

LISA A. LOUY                          MARY WARLOP
Stark County Job and                  116 Cleveland Avenue, N.W.
Family Services                       Suite 500
221 Third Street, S.E.                Canton, Ohio  44702
Canton, Ohio  44702

*Hoffman, J.*

**{¶1}** Appellant, L.M., appeals the October 29, 2012 judgment entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and responsibilities with respect to her two minor children J.K. and C.A., and granted permanent custody to Appellee Stark County Department of Jobs and Family Services.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant is the biological mother of J.K. (dob 3-5-2001) and C.A. (dob 5-10-2010). The biological fathers of the children are not parties to this appeal.

**{¶3}** On January 3, 2011, Appellee filed a complaint alleging the children were dependent and neglected. The children were adjudicated dependent on March 8, 2011, and placed in the temporary custody of Appellee.

**{¶4}** Appellant has four other children, none of whom are in her custody. Appellant transferred legal custody of three of the children to her mother, and she refers to them as her brothers and sisters. The other child was adopted by Appellant's former landlord, and when asked about the child, Appellant fails to recognize this child.

**{¶5}** Appellant's case plan required her to complete a parenting evaluation at Northeast Ohio Behavioral Health (NEOBH) and follow all recommendations, complete an evaluation at Quest and follow all recommendations, successfully complete Goodwill parenting classes, and provide treatment to the children regarding physical and/or mental abnormalities which prevented them from thriving in her care.

**{¶6}** Appellant completed her assessment at NEOBH; however, no recommendations for services could be made due to Appellant's low level of mental

functioning. Dr. Amy Thomas of NEOBH reported Appellant functions at the level of a nine-year-old child, which prevents her from processing any newly obtained information from any recommended services.

{¶7} Appellant completed a drug and alcohol assessment at Quest and was recommended into a treatment class, but she failed to attend the class.

{¶8} Appellant refused to connect with the Bureau of Vocational Rehabilitation services when suggested by Appellee, claiming she "didn't need that." Tr. 7. She went to Coleman Behavioral Health to address mental health diagnoses of bi-polar disorder, anxiety disorder, adjustment disorder and borderline intellectual functioning, but was last seen for counseling at the facility in July of 2011.

{¶9} Appellant began attending Goodwill parenting classes, but was terminated after one week due to "combative, argumentative and uncooperative behaviors." Tr. 7. She was threatening toward other participants in the class and insisted on differently timed breaks and a separated learning environment from the rest of the class. Goodwill offered to re-enroll Appellant in the program after she received counseling, but Appellant failed to attend counseling after July of 2011.

{¶10} When C.A. was first taken into temporary custody she was seven months old and weighed ten pounds and ten ounces. She has a double cleft palate which requires occupational therapy to assist with eating and language development. Appellant did not acknowledge C.A. was improperly nourished for her age.

{¶11} Visits between Appellant and the children were difficult, with Appellant relating to J.K. as a peer and having little interaction with C.A.

{¶12} Appellee moved for permanent custody of the children on April 11, 2012. Following a hearing, the trial court granted the motion and awarded permanent custody of both children to Appellee on October 29, 2012.

{¶13} Appellant assigns a single error on appeal:

{¶14} "THE TRIAL COURT ERRED AND VIOLATED MOTHER'S FUNDAMENTAL PARENTAL RIGHTS AND FAILED TO COMPLY WITH O.R.C. 2151.414 BY TERMINATING MOTHER'S PARENTAL RIGHTS BASED SOLELY ON HER LIMITED COGNITIVE ABILITY."

{¶15} In order to grant a request for permanent custody, the trial court is required to engage in a two-part analysis. First, as required by R.C. 2151.414, it must find one of the factors below exists:

{¶16} " (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶17} "The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in

another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶18} "(b) The child is abandoned.

{¶19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state."

{¶21} The trial court is then required to engage in an assessment of whether a grant of permanent custody is in the best interest of the child utilizing factors set forth in R.C. 2151.414(D) as follows:

{¶22} "(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

{¶23} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{¶24}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶25}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

**{¶26}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶27}** "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

**{¶28}** The trial court found the children could not be placed with Appellant within a reasonable time. The trial court also found permanent custody was in the best interest of the children, who were placed in a foster-to-adopt home and were bonded to the foster parents, while they were not strongly bonded to Appellant.

**{¶29}** Appellant argues the court's findings were based solely on her limited cognitive abilities, which the Ohio Supreme Court prohibited in *In re D.A.*, 113 Ohio St. 3d 88, 2007-Ohio-1105, 862 N.E.2d 829.

**{¶30}** The Ohio Supreme Court held in *In re D.A.* as follows:

**{¶31}** "The trial court stated that D.A.'s future could be 'seriously jeopardized' if he remained with his parents. But there was no evidence that they have harmed D.A. either physically, emotionally, or mentally. D.A. has done well in school, and his behavior is appropriate. At this point, it is speculation to say that he may not reach his full potential if he remains with his parents. We hold that when determining the best interest of a child under R.C. 2151.414(D) at a permanent-custody hearing, a trial court may not base its decision solely on the limited cognitive abilities of the parents.

**{¶32}** "We do not mean to minimize the trial court's concern about appellants' ability to parent their son. R.C. 2151.414, however, does not permit a parent's fundamental right to raise his or her child to be terminated based on mental retardation alone. In other cases in which the parental rights of mentally retarded persons have been terminated pursuant to R.C. 2151.414(E)(1) or (2), objective evidence existed to show that the statute was satisfied. See, e.g., *In re C.E.,* Butler App. Nos. CA2006–01– 015 and CA2006–02–024, 2006-Ohio-4827, 2006 WL 2663464 (the mother needed constant supervision and prompting to meet child's basic needs and had inadequate housing); *In re King,* Fairfield App. No. 05 CA 77, 2006-Ohio-781, 2006 WL 401598 (the mother consistently relied on others to meet many of her basic needs and lost her housing)." *Id.* at ¶36-37.

**{¶33}** The instant case is distinguishable from *In re D.A.* In the instant case, the court's finding the children could not be placed with Appellant within a reasonable time was supported by evidence other than her limited cognitive abilities. She was unable to care for C.A.'s physical needs caused by her cleft palate, resulting in the malnourishment of the child. Although NEOBH recommended no services be provided

to Appellant due to her low mental functioning, Appellee did attempt to provide case plan services to Appellant. Appellant failed to follow through with treatment suggested by Quest. She rejected Appellee's attempts to get her involved and Appellant refused to connect with the Bureau of Vocational Rehabilitation services when suggested by Appellee, claiming she "didn't need that." Tr. 7. She went to Coleman Behavioral Health to address mental health diagnoses of bi-polar disorder, anxiety disorder, adjustment disorder and borderline intellectual functioning, but was last seen there for counseling in July of 2011. Appellant began attending Goodwill parenting classes, but was terminated after one week due to "combative, argumentative and uncooperative behaviors." Tr. 7. She was threatening toward other participants in the class and insisted on differently timed breaks and a separated learning environment from the rest of the class. Goodwill offered to re-enroll Appellant in the program after she received counseling, but Appellant failed to attend counseling after July of 2011.

**{¶34}** As to the court's finding permanent custody was in the best interest of the children, this finding was also supported by evidence other than Appellant's low cognitive functioning. She had difficulty at visits, relating to J.K. as a peer and not bonding at all with C.A. The children were functioning well in a foster-to-adopt home.

**{¶35}** Based on the evidence, we find the court did not err in granting permanent custody to Appellee, and did not base its findings solely on Appellant's low intellectual functioning as prohibited by *In re D.A., supra.*

**{¶36}** The assignment of error is overruled.

**{¶37}** The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Wise, J. concur

s/ William B. Hoffman_____

s/ Patricia A. Delaney _____

s/ John W. Wise _____

JUDGES

WBH/r0301

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF: : 
                                 : 
J.K. AND C.A.              : 
                                 : 
                                 : 
                                 :           JUDGMENT ENTRY
                                 : 
                                 : 
                                 : 
                                 :           CASE NO. 2012 CA 00212

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant.

s/ William B. Hoffman _____

s/ Patricia A. Delaney _____

s/ John W. Wise _____

JUDGES